# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

BRANDON TYLER CUSTIS,  )
                       )
   Plaintiff,          )
                       )
   v.                  )   CAUSE NO.: 3:07-CV-597-TS
                       )
SUPERINTENDENT, INDIANA )
STATE PRISON,          )
                       )
   Defendant.          )

## OPINION AND ORDER

Petitioner Brandon Tyler Custis, a prisoner confined at the Indiana State Prison, filed his Petition for Writ of Habeas Corpus [DE 1], pursuant to 28 U.S.C. § 2254. He challenges his 2002 Clay County, Indiana, convictions for murder, attempted murder, and carrying a handgun without a license. In his Petition, he contends that the admission of an autopsy photograph denied him a fair trial and that his trial counsel was ineffective.

On his direct appeal, the Petitioner argued that the trial court erred in admitting an autopsy photograph and that the trial court improperly overlooked mitigating factors when sentencing him. On August 26, 2003, the Indiana Court of Appeals affirmed the Petitioner's convictions. (DE 8-6, Ex. E.) The Petitioner sought transfer to the Indiana Supreme Court challenging only the admission of the autopsy photograph. (DE 8-7, Ex. F.) The Indiana Supreme Court denied transfer on November 12, 2003. (DE 8-3, Ex. B.)

On June 7, 2004, the Petitioner filed a *pro se* petition for post-conviction relief, which he withdrew without prejudice on December 6, 2004. (DE 8-2, 8-8 & 8-13, Exs. A, G & L). On June 15, 2005, the Petitioner re-filed his petition for post-conviction relief. (DE 8-2 & 8-8, Exs. A & G.) Following a hearing, on December 19, 2006, the post-conviction court denied the petition for

post-conviction relief. (DE 8-2 & 8-8, Exs. A & G.) The Petitioner appealed, asserting that his trial and appellate counsel were ineffective. (DE 8-10, Ex. I.) On September 5, 2007, the Indiana Court of Appeals affirmed the post-conviction court's judgment. (DE 8-9 & 8-13, Exs. H & L.) The Petitioner sought transfer to the Indiana Supreme Court claiming that his trial attorney was ineffective because he failed to object to the prosecutor's argument that he was precluded from raising self-defense and failed to tender jury instructions regarding the causal connection requirement between other crimes the Petitioner might have committed and the confrontation leading to the claim of self-defense. (DE 8-14, Ex. M.) On November 8, 2007, the Indiana Supreme Court denied transfer. (DE 8-9, Ex. H.)

In its opinion on the Petitioner's direct appeal, the Indiana Court of Appeals set forth the basic facts regarding the crimes of which the Petitioner was convicted:

> Custis knew that Anthony Vanet ("Tony") owed their mutual friend Orland Cyphers $300. On the evening of December 28, 2001, Custis was visiting some friends at the home of Colton Cooley in Poland, Indiana. Tony arrived at the home, he and Custis began to argue about the debt, and a scuffle ensued. By the time Cooley ordered the two men to leave, both a window and Custis' eyeglasses had been broken.
> After leaving Cooley's house, Tony called his twin brother, Paul Vanet, who lived in Indianapolis. Tony falsely stated that six to eight men had jumped him at Cooley's house and requested Paul's help. Paul retrieved his 12 gauge shotgun, picked up his friend Bradley Hofmann, and met Tony in Poland. The three men found Custis at Cooley's house around 10:00 p.m. Tony called for Custis to come out and fight, adding that Custis had crossed his path two times and the "third was going to be a charm." Custis, who had consumed five to six Zimas in less than an hour, argued with Tony from the window before walking across the street to a bank parking lot to fight him.
> As Custis, Tony, and their respective friends gathered in the parking lot, a van driven by two of Custis' cohorts, Cyphers and David McGuire, entered the parking lot and stopped near Paul. Paul retrieved a shotgun from his truck, pointed it at Cyphers' van, and told the men not to get out. Meanwhile, Tony punched Custis in the face and bloodied his lip. Neighbors heard the commotion and threatened to call the police. The group disbanded, and Tony and Custis agreed to finish the fight at a church parking lot a mile away.

Custis and his friend Ron Ingalls drove directly to the church parking lot and found the Vanets and Hofmann standing outside their truck. According to some, Paul was holding his shotgun. Custis had not brought a weapon but as he entered the church parking lot Ingalls handed him a .380 caliber handgun that Custis placed in his pocket. Custis then exited his vehicle and began arguing with Tony. At one point, the Vanets and Hofmann returned to their truck and started to leave but got only as far as the church entrance before Paul and Custis started to argue. Paul told Tony to get out of the truck and "kick [Custis'] ass" or Paul would kick Tony's when they got home. Tony, Paul, and Hofmann got out of the truck and headed for Custis.

  There was conflicting testimony as to what occurred next. Custis and another witness testified that Custis pulled out his pistol, waved it in the air, and told the Vanets to leave. Others testified that Custis shot his gun at Tony without warning. All witnesses agreed that after shooting Tony in the face, Custis fired four additional shots. One hit Paul in the arm. In response to Custis' shots, Paul fired his shotgun five times in Custis' general direction without hitting anyone. Tony's post-mortem toxicology reports revealed the presence of amphetamines and marijuana.

  About twelve hours after the shooting, Custis turned himself in to police and was charged with the murder of Tony and the attempted murder of Paul and Hofmann. Custis admitted to police that he shot the men, but maintained he acted in self-defense and fired his gun only because Paul had a gun and the three men would not stop "chargin' at [him]."

*Custis v. State*, 793 N.E.2d 1220, 1222–23 (Ind. Ct. App. 2003) (footnotes omitted). (DE 8-6, Ex. E.)

In a habeas corpus proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner must rebut that presumption of correctness "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The United States Supreme Court has set forth the following standard for evaluating a legal determination made by a state court:

> [The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)] provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is
contrary to this Court's clearly established precedents if it applies a rule
that contradicts the governing law set forth in our cases, or if it confronts a
set of facts that is materially indistinguishable from a decision of this Court
but reaches a different result. A state-court decision involves an
unreasonable application of this Court's clearly established precedents if
the state court applies this Court's precedents to the facts in an objectively
unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted). Additionally,

For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as
determined by this Court refers to the holdings, as opposed to the dicta, of
this Court's decisions as of the time of the relevant state-court decision.
We look for the governing legal principle or principles set forth by the
Supreme Court at the time the state court renders its decision.

*Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004) (quotation marks and citations omitted). Furthermore, the United States Supreme Court has made clear that district courts should not independently decide the merits of the petitioner's legal arguments:

As we have explained, a federal habeas court may not issue the writ simply
because that court concludes in its independent judgment that the state-
court decision applied a [United States] Supreme Court case incorrectly.
Rather it is the habeas applicant's burden to show that the state court
applied [that case] to the facts of his case in an objectively unreasonable
manner.

*Price v. Vincent*, 538 U.S. 634, 641 (2003) (quotation marks, citations, and brackets omitted).

The Petitioner's first ground for relief is that his trial was rendered unfair by the admission of an autopsy photograph at his trial. The Respondent argues that the Petitioner is procedurally barred from raising this claim as a ground for habeas relief because he failed to raise the federal due process claim in the Indiana courts.

"A habeas petitioner may not resort to federal court without first giving the state courts a fair opportunity to address his federal claims and to correct any error of constitutional

4

magnitude." *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999)). To satisfy that requirement, the petitioner must present both the operative facts and the legal principles that control each claim to the state judiciary; otherwise, he has forfeited federal review of his claim. *Id.* Moreover, before a claim is preserved for federal habeas review, it must have been presented at each level of the state's established review process. *Johnson v. Pollard*, 559 F.3d 746, 751–52 (7th Cir. 2009). "Failure to do so constitutes procedural default that precludes review by federal courts." *Id.* at 752. When a petitioner presents a defaulted claim for federal habeas review, the court may consider it only if he can establish cause and prejudice for the default (i.e., some external obstacle prevented petitioner from presenting his claim to the state courts) or that the failure to grant relief would result in a fundamental miscarriage of justice (i.e., a claim that the constitutional deprivation probably has resulted in a conviction of one who is actually innocent). *Gonzales v. Mize*, 565 F.3d 373, 381 (7th Cir. 2009).

In his Traverse, the Petitioner states that he "cited 'U.S. Const. amends. V, XIV' and *'In re Murchison*, 439 U.S. 133 (1955)'" in his brief on direct appeal to the Indiana Court of Appeals. (DE 12 at 4.) Review of the Petitioner's brief to the Indiana Court of Appeals establishes that the Petitioner did cite federal authority in support of his argument that the admission of the autopsy photograph may have violated his right to a fair trial "guaranteed by the state and federal constitutions." (DE 8-4, Ex. C, at 12-13.) However, in his petition for transfer to the Indiana Supreme Court, the Petitioner argued that the admission of the autopsy photograph was contrary to *Corbett v. State*, 74 N.E.2d 622 (Ind. 2002), but he did not assert that the admission of the autopsy photograph violated the Fourteenth Amendment to the United States

5

Constitution, nor did he cite any federal case law for the proposition that the autopsy photograph violated his federally protected rights. (DE 8-7, Ex. F.)

The Petitioner argues in his Traverse that, under Indiana law, a petition to transfer "incorporate[s] all of the material from the lower appellate court into the record and, thus, all of the arguments made in the initial briefs are properly placed before the Indiana Supreme Court." (DE 12 at 4–5.) The Petitioner later adds that "a Petition to Transfer constitutes a request to the state supreme court to review a decision of the court of appeals *in its entirety*; the request is that the *entire appeal* be transferred to the supreme court and be before the supreme court as though it had not been reviewed by the court of appeals." (DE 12 at 7 (citing *Lockridge v. State*, 809 N.E.2d 843, 44 (Ind. 2004); Ind. R. App. P. 58(A) (emphasis in original).)

The Petitioner is misreading the Indiana appellate rules regarding petitions to transfer. He is correct that Indiana Rule of Appellate Procedure 58(A) states, in part, that "[u]pon the grant of transfer, the Supreme Court shall have jurisdiction over the appeal and all issues as if originally filed in the Supreme Court." However, the Indiana Supreme Court did not grant transfer in his case, and the jurisdictional effect of a grant of transfer under Indiana Rule of Appellate Procedure 58(A) did not result. Additionally, the Indiana Rules of Appellate Procedure require a petition to transfer to identify the issue, question, or precedent warranting transfer, Ind. R. App. P. 57(G)(1), and the Petitioner identified the following question in his petition to transfer:

> In *Corbett v. State*, 764 N.E.2d 622 (Ind. 2002), th[e Indiana Supreme] Court held that for an autopsy picture to be admissible, it must be relevant to a fact at issue and the danger of unfair prejudice must be substantially outweighed by its probative value. But in Custis's case, the dissent correctly found that an autopsy picture of the deceased's head cut open with a ruler inserted into his empty brain cavity was irrelevant because the parties agreed on the circumstances causing the victim's death. Because the inflammatory photograph may have unfairly influenced the jury to reject an acquittal or a lesser verdict, does the majority

6

opinion therefore conflict with this Court's opinion in *Corbett*?

(DE 8-7, Ex. F, at i.) Indiana Rule of Appellate Procedure 57(G)(4) mandates that petitions to transfer set forth an argument section explaining the reasons why transfer should be granted. In the argument section of the Petitioner's petition to transfer, he addressed the trial court's admission of the autopsy photograph under the Indiana Supreme Court's *Corbett* precedent, but not the federal claim.[1] As a consequence, the Petitioner did not, in his petition to transfer, give the Indiana Supreme Court notice of the federal claim of which he now seeks habeas review. By not identifying any federal law arguments in his petition to transfer, he failed to submit both the operative facts and the controlling legal principles of the federal claim through one full round of state appellate review. Because the Petitioner did not present his federal law claim regarding the introduction of the autopsy photographs to the Indiana Supreme Court, he has procedurally defaulted on this claim. Additionally, the Petitioner fails to show that there is cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice, and the Court therefore cannot consider this claim.

The Petitioner's second ground for relief is that his trial counsel was ineffective. He contends that the prosecutor improperly argued that he was precluded from arguing self-defense because he was engaged in other crimes at the time of the shooting and because he did not retreat, and that his trial counsel was ineffective for not objecting to the prosecutor's arguments or

---

[1] The Petitioner argues that the Indiana Supreme Court's interpretation of Indiana Appellate Rule 57 in *Lockridge v. State*, 809 N.E.2d 843 (Ind. 2004), suggests that his federal claim was fairly presented in his petition to transfer because he referenced the Fifth and Fourteenth Amendments to the United States Constitution and *In re Murchison* in his brief to the Indiana Court of Appeals, even though in his petition to transfer he failed to identify the federal claim as a question warranting transfer or as an issue in the argument section. The Petitioner is misreading the *Lockridge* opinion. In *Lockridge*, the Indiana Supreme Court denied a petition to transfer, finding that "mere reference to argument and/or authorities presented in brief to [the Court of Appeals], without an explanation of the reasons why transfer should be granted, does not satisfy Rule 57(G)." *Id.* at 844. In this case, the Petitioner did not even reference the federal constitutional argument or authorities in his petition to transfer.

tendering jury instructions on self-defense and the duty to retreat. (DE 1 at 4–7.) The Respondent argues that the Petitioner is barred from claiming his counsel was ineffective for failing to object or tender a jury instruction on the duty to retreat because he failed to raise this as a ground for ineffective assistance of counsel before Indiana's highest court and that the Petitioner's ineffective assistance claim is otherwise without merit.

A claim of ineffective assistance of counsel is governed by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to show both that his lawyer's performance was deficient and that this deficient performance prejudiced his defense. *Stevens v. McBride*, 489 F.3d 883, 890 (7th Cir. 2007). The *Strickland* Court stated:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. To support a claim of ineffective assistance of counsel on habeas review, a petitioner must show that the state court's application of *Strickland's*

attorney-performance standard was objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 702 (2002).

In assessing claims of ineffective assistance of counsel, Indiana courts follow the two-pronged *Strickland* test. In reviewing the post-conviction court's denial of relief to the Petitioner based upon his claim of ineffective assistance of trial counsel, the Indiana Court of Appeals analyzed the Petitioner's ineffective assistance argument under the *Strickland* standard and the Sixth Amendment to the United States Constitution, addressing the contemporaneous crimes and duty to retreat issues. (DE 8-13, Ex. L, at 5–13.) In his petition to transfer asking the Indiana Supreme Court to review the Indiana Court of Appeals decision affirming the post-conviction court's denial of relief to the Petitioner on his ineffective assistance of trial counsel claim under *Strickland* and the Sixth Amendment, the Petitioner addressed the contemporaneous crimes issue and focused on *Mayes v. State*, 744 N.E.2d 390 (Ind. 2001), a possible *Mayes* instruction, and the prosecutor's argument that self-defense was not available to the Petitioner because he was engaged in other crimes. (DE 8-14, Ex. M, at 2–6.) However, in presenting his ineffective assistance of trial counsel claim to the Indiana Supreme Court, the Petitioner did not address the duty to retreat or the prosecutor's argument that the Petitioner could not claim self-defense because he did not retreat. As a consequence, the Petitioner did not in his petition to transfer ask the Indiana Supreme Court to review the duty to retreat issue (either as to the prosecutor's argument or the tender of a duty to retreat instruction), and the Petitioner has thus procedurally defaulted on this issue. Furthermore, the Petitioner fails to argue that there is cause and prejudice for the default or that the failure to consider this issue would result in a fundamental miscarriage of justice, and thus the Court cannot consider the duty to retreat issue. The Court will, however,

review on the merits the Petitioner's ineffective assistance of trial counsel claim as it relates to the contemporaneous crimes issue.

In his argument to the Indiana Court of Appeals, the Petitioner focused on *Mayes v. State*, 744 N.E.2d 390 (Ind. 2001).[2] In *Mayes*, the Indiana Supreme Court considered the provision of the Indiana self-defense statute that makes self-defense unavailable to a person who is committing a crime. *Id.* at 391. At the relevant time, that statute provided that a person is not justified in using force if the person was committing or escaping after the commission of a crime, provoked unlawful action by another person with intent to cause bodily injury to the other person, or had entered into combat with another person or was the initial aggressor (unless the person withdrew from the encounter and communicated to the other person the intent to do so and the other person nevertheless continued or threatened to continue unlawful action). Ind. Code § 35-41-3-2(d) (presently codified with the same language at Ind. Code § 35-41-3-2(e)). The court interpreted "the statute to mean there must be an immediate causal connection between the crime and the confrontation." *Mayes*, 744 N.E.2d at 392. The court amplified this interpretation:

> [B]ecause a defendant is committing a crime at the time he is allegedly defending himself is not sufficient standing alone to deprive the defendant of the defense of self-defense. Rather, there must be an immediate causal connection between the crime and the confrontation. Stated differently, the evidence must show that but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred.

*Id.* at 394. In his concurring in result opinion, Justice Boehm (joined by Justice Dickson) expressed concern that the "but for" test is too broad and would include "many situations where 'but for the defendant committing a crime, the confrontation resulting in injury to the victim

---

[2] The Indiana Supreme Court issued its opinion in *Mayes* on March 13, 2001. The Petitioner's conduct that was the subject of the underlying criminal prosecution occurred on December 28, 2001.

would not have occurred,' but where the defense of self-defense should be available." *Id.* at 396. Nevertheless, the *Mayes* court determined that, even though the trial court had not given a "nuanced" instruction, the trial court's traditional self-defense instruction was not erroneous because it correctly stated the law, because it was not covered by other instructions, and because evidence had been presented at trial to support giving the instruction.[3] *Id.* at 394.

In its unpublished opinion affirming the post-conviction court's judgment in the Petitioner's case, the Indiana Court of Appeals noted that defense counsel did not object during trial to the prosecutor's multiple references to the Petitioner's "alleged crimes including using methamphetamine and smoking marijuana, possessing a stolen gun and using a gun without a permit, being intoxicated, committing disorderly conduct, and trespassing on the church parking lot at the time of the shooting," did not object to the prosecutor's statement that any of these alleged crimes precluded a valid claim of self-defense, and did not "seek a jury instruction regarding the *Mayes* nuance to the traditional instruction under section 35-41-3-2(d)(1)." (DE 8-13, Ex. L, at 7.) The Indiana Court of Appeals was mindful of the *Mayes* court's "nuanced interpretation" of Indiana's self-defense statute, (DE 8-13, Ex. L, at 6), when it considered whether the circumstances of the Petitioner's case required a *Mayes* instruction, whether a traditional self-defense instruction was all that was necessary, and whether counsel was ineffective for not objecting or tendering a *Mayes* instruction.

The Indiana Court of Appeals concluded that the Petitioner could not show prejudice as to

---

[3] The traditional self-defense instruction at issue in *Mayes* was "a near verbatim recitation of the self-defense statute." *Id.* at 394 (referring to Ind. Code § 35-41-3-2); *see also id.* at 392. Additionally, the traditional self-defense instruction in *Mayes* is nearly verbatim to the traditional self-defense instruction given by the trial court in the Petitioner's case. *Compare id. to* Petitioner's Appellate Brief (DE 8-10, Ex. I, at 6). Both instructions in relevant part stated that a person is not justified in using force if he is committing or is escaping after the commission of a crime. *Mayes*, 744 N.E.2d 392; DE 8-10, Ex. I, at 6; DE 8-13, Ex. L, at 7 n.3.

trial counsel's failure to tender or request a *Mayes* instruction because the question of causal connection is a fact question for the jury, because the evidence presented at the trial supported a factual finding of a causal connection, and because "even if trial counsel had sought the nuanced jury instruction, so long as evidence supported a finding of a causal connection, there can be no showing as a matter of law that the trial court was required to instruct the jury accordingly." (DE 8-13, Ex. L, at 8.) In identifying the facts that supported the causal connection, the Indiana Court of Appeals stated: "but for [the Petitioner's] drug use and intoxication, his disorderly conduct, his illegal gun use, and his trespassing, he would not have been in an altered state of mind, nor would he have had the means or been in the location necessary to have the confrontation with the victims resulting in their injury." (DE 8-13, Ex. L, at 8.) Thus, the court found, as a matter of state law and under *Mayes*, that "the trial court would not have been required to instruct the jury regarding the *Mayes* nuance if counsel had so requested. (DE 8-13, Ex. L, at 8.) In determining that there was no prejudice related to the instruction, the Indiana Court of Appeals also pointed to the evidence that the Petitioner fired multiple shots, which it determined undercut the Petitioner's claim of self-defense, and to the evidence that the Petitioner willingly drove to the agreed-upon location for the fight, threatened one of the victims (Paul Vanet) upon arriving at the location, and then fatally shot another victim (Tony Vanet), before firing multiple shots at the victim he threatened (Paul Vanet). The Indiana Court of Appeals thus determined that the jury had before it "substantial evidence" that the Petitioner "was not acting in self-defense, irrespective of the contemporaneous crime language in Indiana Code section 35-41-3-2(d)(1), such that [the court] remain[s] unconvinced that [the Petitioner] suffered any prejudice from his trial counsel's failure to seek the nuanced instruction." (DE 8-13, Ex. L, at 9.)

12

The Indiana Court of Appeals further determined that the Petitioner did not establish prejudice regarding his trial counsel's failure to object to the prosecutor's argument and statements that the Petitioner was precluded from asserting a valid defense of self-defense because he was committing other crimes at the time of the shooting. The court reasoned that, in light of the *Mayes* court's decision, the prosecutor's statement reflected the language of the self-defense statute and was a correct statement of law. Additionally, the court pointed to the evidence that suggested he was not acting in self-defense (i.e., his firing of multiple shots, willingly going to the fight location, and threatening one of the victims).

The *Strickland* prejudice standard requires the Petitioner to establish that, if his counsel had requested a nuanced *Mayes* self-defense instruction and objected to the prosecutor's comments, the result of his trial would have been different. The opinion of the Indiana Court of Appeals elaborates in convincing detail why, even had defense counsel requested and the trial court given a nuanced *Mayes* instruction, the jury had before it "substantial evidence" that the Petitioner was not acting in self-defense. (DE 8-13, Ex. L, at 8–9.) Likewise, the "substantial evidence" before the jury that the Petitioner was not acting in self-defense also defeats the Petitioner's claim of prejudice as to defense counsel's failure to object to the prosecutor's comments about other crimes the Petitioner was committing at the time he shot Tony and Paul Vanet. (DE 8-13, Ex. L, at 9.) The Indiana Court of Appeals decision also makes it clear, as a matter of state law, that had counsel requested a *Mayes* instruction, the trial court would not have been required to so instruct the jury because evidence in the case showed an immediate causal connection. (DE 8-13, Ex. L, at 8 (citing *Mayes*, 744 N.E.2d at 394; *Randolph v. State*, 802 N.E.2d 1008, 1014–15 (Ind. Ct. App. 2004).) Furthermore, the trial court would have properly

13

overruled objections to the prosecutor's comments because they correctly stated Indiana's self-defense law and were based upon evidence before the jury of the Petitioner's conduct. (DE 8-13, Ex. L, at 8–9.)

The Indiana Court of Appeals considered the Petitioner's claims under the Supreme Court's *Strickland* standard and rejected his ineffective assistance of counsel claim. In its application of the *Strickland* test to this Petitioner's ineffective assistance of counsel claims, the Indiana Court of Appeals did not unreasonably apply clearly established Supreme Court precedents to the facts of his case. The Indiana Court of Appeals correctly determined that, under *Strickland*, defense counsel's performance was not deficient in not seeking a nuanced *Mayes* instruction and in not objecting to the comments by the prosecutor, and that even had his counsel acted as the Petitioner suggests, there is no reasonable probability that the outcome of his trial would have been different. For these reasons, the Court finds that the Petitioner is not entitled to habeas relief on his claim that his trial counsel provided ineffective assistance of counsel.

**CONCLUSION**

For the foregoing reasons, the Court DENIES this Petition for Writ of Habeas Corpus.

SO ORDERED on August 18, 2009.

                                              S/ Theresa L. Springmann
                                              THERESA L. SPRINGMANN, JUDGE
                                              UNITED STATES DISTRICT COURT
                                              FORT WAYNE DIVISION